| | |
|---|---|
| Debtor 1 | Dennis Jordan Autry, Jr. |
| Debtor 2 (Spouse, if filing) | Darlene Elizabeth Autry |
| United States Bankruptcy Court for the: | District of Kansas (State) |
| Case number | 17-21290 |

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

MTGLQ Investors, L.P.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

__ No

X Yes. From whom? _____ SPS _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Rushmore Loan Management Services, LLC
Name

PO Box 55004
Number       Street

Irvine, CA 92619-2708
City       State       Zip Code

Contact phone:  888-504-6700

Contact email

Where should payments to the creditor be sent? (if different)

Rushmore Loan Management Services
Name

PO Box 52708
Number       Street

Irving, CA 92619-2708
City       State       Zip Code

Contact phone:  888-504-6700

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

X No

__ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / yyyy

**5. Do you know if anyone else has filed a proof of claim for this claim?**

X No

__ Yes. Who made the earlier filing? _____

Case 17-21290    Doc# 38-1    Filed 05/11/18    Page 1 of 59

6. **Do you have any number you use to identify the debtor?**

    ⎯ No

    **X** yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  XXXXXX4418

7. **How much is the claim?**     $ _____259,775.36_____. **Does this amount include interest or other charges?**

    ⎯ No

    **X** Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

    Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

    Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

    Limit disclosing information that is entitled to privacy, such as health care information.

    __Money Loaned_____

9. **Is all or part of the claim secured?**

    ⎯ No

    **X** Yes.    The claim is secured by a lien on property.

    **Nature of property:**

    **X**  Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim

    ⎯  Motor vehicle

    ⎯  Other. Describe: _____

    **Basis for perfection:**     __Recorded Mortgage_____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:**                          $_____

    **Amount of the claim that is secured:**    $_259,775.36____

    **Amount of the claim that is unsecured:**  $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition:**   $_35,904.68____

    **Annual Interest Rate** (when case was filed)   5.00   %

    **X**  Fixed

    ⎯  Variable

10. **Is this claim based on a lease?**

    **X**  No

    ⎯  Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

    **X**  No

    ⎯  Yes. Identify the property:_____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**X** No

___ yes.

| | Amount entitled to priority |
|---|---|
| ___ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ___ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ___ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ___ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ___ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ___ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |

* Amounts are subject to adjustment on 4|01|19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

___ I am the creditor.

**X** I am the creditor's attorney or authorized agent.

___ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

___ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   5/11/2018
                   MM / DD / YYYY

_s/Lisa C. Billman_
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Lisa C. Billman |
|---|---|
| | First name          Middle name          Last name |
| Title | Attorney |
| Company | SouthLaw, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 13160 Foster Suite 100 |
| | Number        Street |
| | Overland Park, KS 66213-2660 |
| | City                              State        ZIP Code |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In Re:

Dennis Jordan Autry, Jr., and Darlene Elizabeth Autry, *Debtors*

MTGLQ Investors, L.P., by Rushmore Loan Management Services, LLC, *Creditor*

vs.

Dennis Jordan Autry, Jr., and Darlene Elizabeth Autry, *Debtors*

and

William H Griffin, *Trustee*

Case No. 17-21290

Chapter: 13

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was filed electronically on this May 11, 2018 with the United States Bankruptcy Court for the District of Kansas , and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court and shall be served by U.S. Mail, First Class, postage prepaid, on those parties directed by the Court on the Notice of Electronic Filing issued by the Court and as required by the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court.

Dennis Jordan Autry, Jr.
Darlene Elizabeth Autry
634 East Bluebird Street
Gardner, KS 66030
**DEBTOR**

Sarah A. Sypher
Sypher Law, LLC
11011 King Street
Suite 220
Overland Park, KS 66210
**ATTORNEY FOR DEBTOR**

William H Griffin
5115 Roe Blvd Ste 200
Roeland Park, KS 66205-2393
**TRUSTEE**

U.S. Trustee
Office of the United States Trustee
301 North Main Suite 1150
Wichita, KS 67202
**U.S. TRUSTEE**

SOUTHLAW, P.C.
  s/Lisa C. Billman
Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Lisa C. Billman (MBE #64535, KS #25177)
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
ksbkecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 183323
Case No: 17-21290

**Mortgage Proof of Claim Attachment**

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 17-21290 | Principal Balance: | $171,784.12 | Principal & Interest Due: | $20,757.33 | Principal & Interest: | $715.77 |
| Debtor 1: | Dennis Jordan Autry, Jr. | Deferred Balance: | $53,296.97 | Prepetition fees due: | $404.96 | Monthly Escrow: | $193.08 |
| Debtor 2: | | Interest Due: | $20,898.52 | Escrow deficiency for funds advanced: | $13,711.49 | Private Mortgage Insurance: | $0.00 |
| Last 4 digits to identify: | XXXXXX4418 | Fees, costs due: | $404.96 | Projected escrow shortage: | $1,351.60 | Total Monthly Payment: | $908.85 |
| | | Escrow deficiency for funds advanced: | $13,711.49 | Less funds on hand: | $320.70 | | |
| Creditor | MTGLQ Investors, L.P. | | | | | Effective Date: | 8/1/2017 |
| Servicer: | Rushmore Loan Management Serv | Less total funds on hand: | $320.70 | Total prepetition arrearage: | $35,904.68 | | |
| Fixed accrual/daily simple interest/other: | Other | Total debt: | $259,775.36 | | | | |

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 12/1/2014 | $1,162.85 | | | Contractual Payment Due | | $1,162.85 | | | | | | $171,784.12 | | $1,475.32 | $0.00 | $0.00 |
| 12/9/2014 | | | -$1,441.80 | County Tax Disbursement | | $1,162.85 | | | -$1,441.80 | | | $171,784.12 | | $33.52 | $0.00 | $0.00 |
| 12/31/2014 | | | -$1,998.00 | Homeoners Insurance Disbursement | | $1,162.85 | | | -$1,998.00 | | | $171,784.12 | | -$1,964.48 | $0.00 | $0.00 |
| 1/1/2015 | $956.07 | | | Contractual Payment Due | | $2,118.92 | | | | | | $171,784.12 | | -$1,964.48 | $0.00 | $0.00 |
| 1/7/2015 | | $1,162.85 | | Payment Received | 12/1/2014 | $956.07 | $0.00 | $715.77 | $447.08 | | | $171,784.12 | | -$1,517.40 | $0.00 | $0.00 |
| 2/1/2015 | $956.07 | | | Contractual Payment Due | | $1,912.14 | | | | | | $171,784.12 | | -$1,517.40 | $0.00 | $0.00 |
| 3/1/2015 | $715.77 | | | Contractual Payment Due | | $2,627.91 | | | | | | $171,784.12 | | -$1,517.40 | $0.00 | $0.00 |
| 3/20/2015 | | $956.07 | | Payment Received | 1/1/2015 | $1,912.14 | $0.00 | $715.77 | $240.30 | | | $171,784.12 | | -$1,277.10 | $0.00 | $0.00 |
| 4/1/2015 | $715.77 | | | Contractual Payment Due | | $2,627.91 | | | | | | $171,784.12 | | -$1,277.10 | $0.00 | $0.00 |
| 4/17/2015 | | | -$1,441.80 | County Tax Disbursement | | $2,627.91 | | | -$1,441.80 | | | $171,784.12 | | -$2,718.90 | $0.00 | $0.00 |

| Date | | | | Description | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/1/2015 | $715.77 | | | Contractual Payment Due | | $3,343.68 | | | | | $171,784.12 | | -$2,718.90 | $0.00 | $0.00 |
| 5/29/2015 | | $1,276.77 | | Payment Received | 2/1/2015 | $2,387.61 | $0.00 | $715.77 | $240.30 | $320.70 | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 6/1/2015 | $715.77 | | | Contractual Payment Due | | $3,103.38 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 7/1/2015 | $715.77 | | | Contractual Payment Due | | $3,819.15 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 8/1/2015 | $715.77 | | | Contractual Payment Due | | $4,534.92 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 9/1/2015 | $715.77 | | | Contractual Payment Due | | $5,250.69 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 10/1/2015 | $715.77 | | | Contractual Payment Due | | $5,966.46 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 11/1/2015 | $715.77 | | | Contractual Payment Due | | $6,682.23 | | | | | $171,784.12 | | -$2,478.60 | $0.00 | $320.70 |
| 11/30/2015 | | | -$2,159.00 | Homeoners Insurance Disbursement | | $6,682.23 | | | -$2,159.00 | | $171,784.12 | | -$4,637.60 | $0.00 | $320.70 |
| 12/1/2015 | $715.77 | | | Contractual Payment Due | | $7,398.00 | | | | | $171,784.12 | | -$4,637.60 | $0.00 | $320.70 |
| 12/8/2015 | | | -$1,613.84 | County Tax Disbursement | | $7,398.00 | | | -$1,613.84 | | $171,784.12 | | -$6,251.44 | $0.00 | $320.70 |
| 1/1/2016 | $715.77 | | | Contractual Payment Due | | $8,113.77 | | | | | $171,784.12 | | -$6,251.44 | $0.00 | $320.70 |
| 1/28/2016 | | | $344.96 | Foreclosure Costs | | $8,113.77 | | | $344.96 | | $171,784.12 | | -$6,251.44 | $344.96 | $320.70 |
| 2/1/2016 | $715.77 | | | Contractual Payment Due | | $8,829.54 | | | | | $171,784.12 | | -$6,251.44 | $344.96 | $320.70 |
| 2/24/2016 | | | $15.00 | Property Inspection | | $8,829.54 | | | $15.00 | | $171,784.12 | | -$6,251.44 | $359.96 | $320.70 |
| 3/1/2016 | $715.77 | | | Contractual Payment Due | | $9,545.31 | | | | | $171,784.12 | | -$6,251.44 | $359.96 | $320.70 |
| 4/1/2016 | $715.77 | | | Contractual Payment Due | | $10,261.08 | | | | | $171,784.12 | | -$6,251.44 | $359.96 | $320.70 |
| 4/25/2016 | | | -$1,613.83 | County Tax Disbursement | | $10,261.08 | | | -$1,613.83 | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 5/1/2016 | $715.77 | | | Contractual Payment Due | | $10,976.85 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 6/1/2016 | $715.77 | | | Contractual Payment Due | | $11,692.62 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 7/1/2016 | $715.77 | | | Contractual Payment Due | | $12,408.39 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 8/1/2016 | $715.77 | | | Contractual Payment Due | | $13,124.16 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 9/1/2016 | $715.77 | | | Contractual Payment Due | | $13,839.93 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2016 | $715.77 | | Contractual Payment Due | $14,555.70 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 11/1/2016 | $715.77 | | Contractual Payment Due | $15,271.47 | | | | | $171,784.12 | | -$7,865.27 | $359.96 | $320.70 |
| 11/29/2016 | | -$2,317.00 | Homeoners Insurance Disbursement | $15,271.47 | | -$2,317.00 | | | $171,784.12 | | -$10,182.27 | $359.96 | $320.70 |
| 12/1/2016 | $715.77 | | Contractual Payment Due | $15,987.24 | | | | | $171,784.12 | | -$10,182.27 | $359.96 | $320.70 |
| 12/6/2016 | | -$1,764.61 | County Tax Disbursement | $15,987.24 | | -$1,764.61 | | | $171,784.12 | | -$11,946.88 | $359.96 | $320.70 |
| 1/1/2017 | $715.77 | | Contractual Payment Due | $16,703.01 | | | | | $171,784.12 | | -$11,946.88 | $359.96 | $320.70 |
| 2/1/2017 | $715.77 | | Contractual Payment Due | $17,418.78 | | | | | $171,784.12 | | -$11,946.88 | $359.96 | $320.70 |
| 3/1/2017 | $715.77 | | Contractual Payment Due | $18,134.55 | | | | | $171,784.12 | | -$11,946.88 | $359.96 | $320.70 |
| 4/1/2017 | $715.77 | | Contractual Payment Due | $18,850.32 | | | | | $171,784.12 | | -$11,946.88 | $359.96 | $320.70 |
| 4/18/2017 | | -$1,764.61 | County Tax Disbursement | $18,850.32 | | -$1,764.61 | | | $171,784.12 | | -$13,711.49 | $359.96 | $320.70 |
| 4/20/2017 | | $15.00 | Property Inspection | $18,850.32 | | | $15.00 | | $171,784.12 | | -$13,711.49 | $374.96 | $320.70 |
| 5/1/2017 | $715.77 | | Contractual Payment Due | $19,566.09 | | | | | $171,784.12 | | -$13,711.49 | $374.96 | $320.70 |
| 5/23/2017 | | $15.00 | Property Inspection | $19,566.09 | | | $15.00 | | $171,784.12 | | -$13,711.49 | $389.96 | $320.70 |
| 6/1/2017 | $715.77 | | Contractual Payment Due | $20,281.86 | | | | | $171,784.12 | | -$13,711.49 | $389.96 | $320.70 |
| 6/28/2017 | | $15.00 | Property Inspection | $20,281.86 | | | $15.00 | | $171,784.12 | | -$13,711.49 | $404.96 | $320.70 |
| 7/1/2017 | $715.77 | | Contractual Payment Due | $20,997.63 | | | | | $171,784.12 | | -$13,711.49 | $404.96 | $320.70 |
| 7/7/2017 | | | Bankruptcy Filed | $20,997.63 | | | | | $171,784.12 | | -$13,711.49 | $404.96 | $320.70 |
| 7/7/2017 | | $53,296.97 | Deferred Principal Balance | $20,997.63 | $53,296.97 | | | | $225,081.09 | | -$13,711.49 | $404.96 | $320.70 |

# ADDENDUM TO CHAPTER 13 PROOF OF CLAIM
# FOR RESIDENTIAL HOME MORTGAGE DEBT
# PAID THROUGH CHAPTER 13 TRUSTEE

I. Creditor Information

Loan No: XXXXXX4418
Creditor Name: MTGLQ Investors, L.P.

Servicer Name: Rushmore Loan Management Services, LLC
Address: 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618
Contact Person: Customer Service
Tel No: (866)858-7877
Fax No:
Email:

Payments should be made payable to: MTGLQ Investors, L.P.

Address to which payments are to be sent: Rushmore Loan Management Services, P.O. Box 52708, Irvine, CA 92619-2708

Creditor Attorney Name: Lisa C. Billman
Address: 13160 Foster, Suite 100, Overland Park, KS 66213-2660
Contact: Customer Service
Tel No: (913) 663-7600
Fax No: (913) 663-7899
Email:

II. Loan Information

Type of Loan and rate as of petition date: Conventional

Fixed Rate: _____ % (State interest rate as of date of petition)
Adjustable Rate: 5.00 % (State interest rate as of date of petition)
Last Adjustment Date:
Next Adjustment Date:
Date of month payment due: 1st
Date of month payment considered late under note: 16th
Amount of late fee: 5.0% of the overdue payment of principal and interest.

Post-petition payments August 1, 2017
Principal & Interest: $ 715.77
Escrow: $ 193.08
Insurance: $
Other: _____ $
Other: _____ $
Total post-petition payment: $ 908.85

III. Interest on Pre-petition Arrearage

Creditor demands interest on the full pre-petition arrearage of $ _____

This loan was executed prior to October 22, 1994.

The loan documents provided for interest on all arrearages.

The loan jurisdiction allows for interest on arrearages.

Interest is demanded at the contract rate of _____ %

Interest is demanded at _____ %

Creditor demands interest on the advances of $ _____

The loan documents provide for interest on advances.

The loan jurisdiction allows for interest on advances.

Interest is demanded at the contract rate of _____ %

Interest is demanded at _____ %

# ADJUSTABLE RATE NOTE

### (LIBOR Six-month Index (As Published In *The Wall Street Journal*) — Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

October 17, 2005

**GARDNER**
[City]

**KS**
[State]

**634 EAST BLUEBIRD STREET**
**GARDNER, KS 66030**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **$177,430.40** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **Accredited Home Lenders, Inc., A California Corporation** . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.625%** . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

The finance charge shall be computed in accordance with the actuarial method using a 360/360 method (Section 9,K.S.A. 16a-2-103(2)(B).

## 3. PAYMENTS --See Attached Balloon Addendum to Adjustable Rate Note.

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the **1st** day of every month, beginning on **December 1, 2005.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **November 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 502480 San Diego, CA 92150-2480** or at a different place if required by the Note Holder.

Initials: _____

MIN #

AUTRY
Page 1 of 6

Loan #

AHL modified FannieMae 3520 (1/01)

Case 17-21290     Doc# 38-1     Filed 05/11/18     Page 10 of 59

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,184.05.** This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the **1st** day of **November, 2007** and on the **1st** of every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And One-eighth** percentage points (**6.125 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.125 %** or less than **7.625 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage point(s) (**1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.625 %** or less than **7.625 %**.

Initials: _____

Case 17-21290    Doc# 38-1    Filed 05/11/18    Page 11 of 59

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY - See Prepayment Rider attached hereto.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayment. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payment after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MIN # ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

AUTRY
Page 3 of 6

Initials: _____
Loan # ▮▮▮▮▮▮
AHL modified Fannie Mae 3520 (1/01)

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MIN #  ▮▮▮▮▮▮▮▮▮▮

AUTRY

Page 4 of 6

Initials: _____
Loan # ▮▮▮▮▮▮▮

AHL modified FannieMae 3520 (1/01)

Case 17-21290   Doc# 38-1   Filed 05/11/18   Page 13 of 59

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MIN # ███████████

███████████

AUTRY

Page 5 of 6

Initials:

Loan # ███████████

AHL modified FannieMae 3520 (1/01)

Case 17-21290   Doc# 38-1   Filed 05/11/18   Page 14 of 59

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 10-17-05    _____ 10/17/05
Borrower                Date          Borrower                Date
**DENNIS X AUTRY, Jr.**                **DARLENE AUTRY**
     J. DTA Jr.

_____ _____       _____ _____
Borrower                Date          Borrower                Date

_____ _____       _____ _____
Borrower                Date          Borrower                Date

_____ _____       _____ _____
Borrower                Date          Borrower                Date

Case 17-21290   Doc# 38-1   Filed 05/11/18   Page 15 of 59

Loan No: ███████

Mortgagee: DENNIS J. AUTRY Jr., DARLENE AUTRY

Address:   634 EAST BLUEBIRD STREET
           GARDNER, KS 66030

Loan Amount:$177,430.40

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE

*Karen C Prancuk*
Karen C Prancuk
Assistant Secretary
Accredited Home Lenders, Inc., A California Corporation

Case 17-21290   Doc# 38-1   Filed 05/11/18   Page 16 of 59

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER TO NOTE is made this 17th day of October, 2005, and is incorporated into and shall be deemed to amend and supplement the Note or Adjustable Rate Note, as applicable (the "Note"), of the same date given by the undersigned Borrower(s) to Accredited Home Lenders, Inc., A California Corporation.

## NOTICE TO THE BORROWER

**DO NOT SIGN THIS PREPAYMENT CHARGE RIDER TO NOTE BEFORE YOU READ IT. THIS PREPAYMENT CHARGE RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.**

**The provisions of this Prepayment Charge Rider to Note are authorized by applicable state law or the federal Alternative Mortgage Transaction Parity Act of 1982, 12 U.S.C. §§ 3801 et seq.**

## PREPAYMENT CHARGE

I/we may make a full prepayment or partial prepayments. However, if the aggregate amount of the prepayment(s) made during any six (6) month period within (Six(6)) months of the date of the Note exceeds ten percent (10%) of the original principal amount of the Note, then as consideration for the acceptance of such prepayment(s), I/we agree to pay the holder of the Note a sum equal to five percent (5%) of the entire amount so prepaid. Any prepayments made after said initial (Six(6))month period shall not be subject to any prepayment charge.

| | | | |
|---|---|---|---|
| _Dennis J. Autry, Jr._ | 10-17-05 | _Darlene Autry_ | 10/17/05 |
| Borrower DENNIS X AUTRY, Jr. J. DSA Jr. | Date | Borrower DARLENE AUTRY | Date |
| | | | |
| Borrower | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |

Case 17-21290   Doc# 38-1   Filed 05/11/18   Page 17 of 59

# BALLOON ADDENDUM TO ADJUSTABLE RATE NOTE

THIS ADDENDUM is made this **17th** day of **October, 2005** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note made by the undersigned (the "Borrower") in favor of **Accredited Home Lenders, Inc.**

(the "Lender") and dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

| | |
|---|---|
| _Dennis J. Autry_ 10-17-05 | _Darlene Autry_ 10/17/05 |
| Borrower   Date | Borrower   Date |
| **DENNIS J AUTRY, Jr.** | **DARLENE AUTRY** |
| J. DJAJr. | |

| | |
|---|---|
| Borrower   Date | Borrower   Date |

| | |
|---|---|
| Borrower   Date | Borrower   Date |

| | |
|---|---|
| Borrower   Date | Borrower   Date |

**AUTRY**

**Homestead Title**
File No. ████████

2005 1018-0007012          10/18/2005
3 1 of 22   F $92.00   02 45 18 PM
Register of Deeds   1/2005PRE9801
Johnson Co ROD   B 2005*0  P 207012

2005 1018-0007012
10/18/2005 3 45PM   1/2005035988
Indebtedness      $177,433 40
Mortgage Tax      $467 32

Return To: Accredited Home Lenders, Inc.
  Attn: Post Closing Dept.
  16550 West Bernardo Dr. Bldg 1
  San Diego, CA 92127-1879

Prepared By: Accredited Home Lenders, Inc., A California Corporation
  15090 Avenue of Science San Diego, CA 92128

[Space Above This Line For Recording Data]

# MORTGAGE

MIN ████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **October 17, 2005**, together with all Riders to this document.

**(B) "Borrower"** is DENNIS X AUTRY, JR. AND DARLENE AUTRY, HUSBAND AND WIFE

*J. DJA Jr.*

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS

KANSAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3017 1/01

VMP ®  -6A(KS) (0212) 01

Page 1 of 16   Initials: _____

VMP Mortgage Solutions (800)521-7291

**(D)** "Lender" is  Accredited Home Lenders, Inc.
A California Corporation
Lender is a  Corporation
organized and existing under the laws of  the State of California
Lender's address is  15090 Avenue of Science
San Diego, CA 92128
**(E)** "Note" means the promissory note signed by Borrower and dated October 17, 2005
The Note states that Borrower owes Lender one hundred seventy-seven thousand four
hundred thirty and 40/100                                            Dollars
(U.S. $177,430.40          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2035  .
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| **x** Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | **x** Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L)** "Escrow Items" means those items that are described in Section 3.
**(M)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O)** "Periodic Payment" means the regularly scheduled amount due for: (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: _____

VMP -6A(KS) (0207).01                    Page 2 of 15                    Form 3017  1/01

20051018-0007012
P  2 of 22                          10/18/2005
                                    03:45:16 PM
Register of Deeds                   T20050000001
Johnson Co ROD   B:200510  P:007012

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower mortgages and warrants to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| County | of | JOHNSON | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

See Legal Description Addendum Page Attached

Parcel ID Number: CP36250004 0010    which currently has the address of
634 EAST BLUEBIRD STREET    [Street]
GARDNER    [City], Kansas 66030    [Zip Code]
("Property Address"):

　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: _____

VMP®-6A(KS) (0202).01    Page 3 of 15    Form 3017  1/01

2005T018-0007012    10/18/2005
P: 3 of 22    03:46:16 PM
Register of Deeds    T20050050691
Johnson Co KS    B 2005018 P:007012

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials: _____

2005101G-0007012                    10/18/2005
P. 4 of 22                          03:45:16 PM
Register of Deeds                   T20050058691
Johnson Co RGD      B:200510  P:007012

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

20051018-0007012                          13/18/2005
P. 5 of 22                                03:45:16 PM
Register of Deeds              T20050058091
Johnson Co HO$            R 200510  P:007012

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: [signature]

20051018-0007012     10/18/2005
P: 6 of 22        03:46:15 PM
Register of Deeds     T20050059691
Johnson Co R00    B:200510 P:007012

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

20051018-0007012        10/18/2005
P: 7 of 22              03:45:15 PM
Register of Deeds       T20050098691
Johnson Co ROD    B:200518  P:007012

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

20051018-0087012                    10/18/2005
P: 8 of 22                          03:45:15 PM
Register of Deeds                   T20050059601
Johnson Co R00    B:200510  P:0087012

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

B- 9 of 22              10/18/2005
Register of Deeds      03:45:15 PM
Johnson Co ROD         T2005005860!
                       B:200518 P:007012

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

20051018-0007012    10/18/2005
P. 10 of 22    03:45:15 PM
Register of Deeds    T20050059891
Johnson Co ROD    B.200510 P:007012

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: ___

20050610-0007012   10/19/2005
P: 11 of 22   03:48:15 PM
Register of Deeds   T20050050891
Johnson Co R00   B:200510 P:007012

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

20051018-0007012      10/18/2005
P: 12 of 22       03:45:15 PM
Register of Deeds    T20050050091
Johnson Co ROD    B:200510 P:007012

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

Lender shall be entitled to collect all reasonable expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees, to the extent allowed by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Redemption.** Borrower waives all rights of redemption to the extent allowed by law.

Initials: _____

-6A(KS) (0207).01          Page 13 of 15          Form 3017  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____                                     (Seal)

_____                DENNIS J. AUTRY, Jr.         -Borrower

_____                                       (Seal)

                                       DARLENE AUTRY            -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                  -Borrower

_____ (Seal)        _____ (Seal)
               -Borrower                                  -Borrower

-6A(KS) (0309).01                   Page 14 of 15                 Form 3017  1/01

20051018-0007012        10/18/2005
P- 14 of 22              03:46:15 PM
Register of Deeds      T2005006891
Johnson Co ROD    B:200810  P-3878:2

STATE OF KANSAS,      *Johnson*    County ss:

BE IT REMEMBERED, that on this *17th* day of *October* *2005*,
before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared
DENNIS A AUTRY Jr., DARLENE AUTRY *Husband + wife*

*J. DJATr*

to me personally known to be the same person(s) who executed the above and foregoing instrument of
writing, and duly acknowledged the execution of same.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal on the day and year last
above written.

My Commission Expires:

NOTARY PUBLIC-State of Kansas
CRISTA FLETCHER
My Appt. Exp. *11 2010*

Notary Public

*Crista Fletcher*

Type Name

Initials: 

-6A(KS) (0202).01      Page 15 of 18      Form 3017 1/01

2005I018-0007012    10/18/2005
P: 15 of 22    03:46:15 PM
Register of Deeds    T20050065691
Johnson Co ROD    B:200512 P:007012

 **CALIBER**
**HOME LOANS**

P.O. Box 24610
Oklahoma City, OK 73124-0610

May 9, 2014

DENNIS J AUTRY JR.
DARLENE AUTRY
LAW OFFIC OF JORDAN SCHWARTZ, P.A.
10955 LOWELL AVE. SUITE 630
OVERLAND PARK    KS 66210

Re       Loan Number: 

Dear DENNIS J AUTRY JR. and DARLENE AUTRY:

**Congratulations!** Your loan has been selected to participate in Caliber Home Loans, Inc.'s exclusive "Interest Only" loan modification program. The program terms are simple and clear. Caliber will adjust the rate of interest on the above referenced loan. All other terms and conditions of the mortgage loan remain intact.

**Upon accepting** the terms and conditions for "Interest Only" loan modification program, your new payment details will be as follows:

| | | |
|---|---|---|
| Interest Payment | $ | 720.59 |
| Escrow (tax and insurance)* | $ | 447.08 |
| Ancillary* | $ | 0.00 |
| **Total New "Interest Only" Payment** | **$** | **1,167.67** |

* Note that future adjustments for escrow payments, such as taxes and insurance, continue to adjust according to the annual escrow analysis.

**Accepting** the loan modification terms is easy. Please carefully read and follow these two simple steps:

1.   Review the enclosed Loan Modification Agreement, and if you agree to the terms and conditions, then:
     a.   Have all original borrowers sign and date the agreement in front of a witness.
     b.   Have the witness also sign where noted (this is very important; we may delay the final processing of the modification if this is missing).
2.   Using the enclosed prepaid envelope, return to us:
     a.   A good faith payment in the amount of $ 1,167.67 in the form of certified funds or money order.
     b.   Original signed Loan Modification Agreement (keep a copy for your records).

**Act now.** Our modification program is a very special and limited offer; therefore, we can only hold it open for you for the next 15 days. All terms and conditions of your existing loan remain in effect and unchanged until the first payment due of $ 1,167.67 and the signed agreement are received in our office. So act now.

Our modification specialists are available to assist you with any questions. Please call us at 800-621-1437, extension 4734.

Sincerely,

Collections Department
Caliber Home Loans, Inc.

**Pursuant to section 169 of the Housing and Community Development Act of 1987,** you may have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may obtain a list of the HUD-approved housing counseling agencies by calling the HUD nationwide toll free telephone number at (800) 569-4287or by visiting www.hud.gov/offices.

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge:** If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

## MODIFICATION AGREEMENT

This **Modification Agreement** (the **"Agreement"**) is dated as of May 9, 2014 but effective as of the Modification Effective Date defined herein, by and between DENNIS J AUTRY JR. and DARLENE AUTRY (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").

RECITALS:

A.  Borrower currently has a mortgage loan, account no. ▉▉▉▉▉▉ serviced by Servicer (the "Loan") secured by real property located at 634 EAST BLUEBIRD STREET  GARDNER KS 66030-1829 (the "Property"). The legal description of the Property is (if recordation of this Agreement is necessary).

B.  Borrower executed and delivered the following documents among others, related to the Loan (collectively, the "Loan Documents"):

    1)      Note dated October 17, 2005 in the original principal amount of $ 177,430.40 (the "Note"); and

    2)      Mortgage or Deed of Trust on the Property to secure, and bearing the same date as, the Note recorded in the records of JOHNSON, KS.

C.  As of May 9, 2014, amounts due and outstanding under the Note but not paid by Borrower total $ 226,238.30, consisting of unpaid principal of $ 172,941.33, accrued but unpaid interest of $ 31,651.66, and unpaid fees or advances due to Servicer of $ 21,645.31. A portion of the advances due to Servicer includes advances for taxes and insurance ("Ancillary" amounts) totaling $ 20,027.31.

D.  Borrower is in default under the Loan Documents, and Servicer has properly accelerated the Note or may, at Servicer's option, accelerate the Note.

E.  Borrower has delivered to Servicer documentation of Borrower's current financial situation as requested by Servicer and, as an accommodation to Borrower, Servicer has offered to modify the terms of the Loan as described herein.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.  **Borrower's Representations.** Borrower hereby certifies and represents to Servicer:

A.  Borrower is experiencing a financial hardship and, as a result, (i) is in default under the Loan Documents, and (ii) does not have sufficient income or access to sufficient liquid assets to make the existing scheduled monthly mortgage payments now or in the near future;

B.  The Property has not been condemned or is not subject to condemnation proceedings;

C.  There has been no change in the ownership of the Property since Borrower signed the Loan Documents;

D.  Borrower has provided documentation as requested by Servicer including documentation for all income that Borrower receives (and understands that Borrower is not required to disclose child support or alimony unless Borrower chooses to rely on such income when requesting to qualify for the modification described in this Agreement);

E.  All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct; and

4:72

F. If Servicer requires Borrower to obtain credit counseling in connection with the execution of this Agreement, Borrower will do so within 30 days of execution of this Agreement and provide Servicer with proof thereof.

2. **Preconditions to Effectiveness of Agreement.** Borrower agrees to sign and return the original signed Agreement to Servicer where indicated below on or before May 24, 2014. Upon receipt of Borrower's signed Agreement, Servicer will determine, in its sole discretion, whether Borrower's representations in Section 1 of this Agreement continue to be true and correct in all material respects. If Servicer determines that the representations continue to be true and correct, then Servicer will execute this Agreement where indicated below, and the modifications to the Loan Documents described herein will become effective on the date inserted by Servicer under its signature below (the "Modification Effective Date"). If Servicer determines that any of Borrower's representations are not true and correct, then Servicer will not be obligated or bound to execute this Agreement or to modify the Loan Documents as described herein, the Loan Documents will not be modified as described herein, this Agreement will be null and void, and Servicer will retain all rights and remedies under the Loan Documents.

3. **Modification of the Loan Documents.** If the preconditions described in Section 2 of this Agreement have been satisfied, both Parties have signed the Agreement, then the Loan Documents are hereby modified as follows:

The new principal balance of the Note is $ 172,941.33 ("New Principal Balance"). The new total balance of the Loan, which includes unpaid principal, interest accrued but not paid, and all outstanding Servicer fees, charges and advances, will be $ 226,238.30 ("New Total Balance") (the total due as of date of this document May 9, 2014). The New Total Balance includes Servicer's deferral of unpaid principal, interest accrued but not paid, Servicer fees, charges, and/or advances in the amount of $ 33,269.66 ("Deferred Amounts").

Interest at the rate of 5% will begin to accrue on the New Principal Balance as of June 1, 2014 and through the Reduction Period Maturity Date (defined below). You will make monthly payments of "interest only" accruing at the New Interest Rate (defined below) on the New Principal Balance beginning July 1, 2014 and continuing thereafter until the Reduction Period Maturity Date. Because these are "interest only" payments, the New Principal Balance will not be reduced. The monthly payments will vary based upon the number of days between payment days. In addition to this payment, Servicer may, as allowed by the loan documents and the Real Estate Settlement Procedures Act, collect deposits to an escrow account for the payment of real property taxes, insurance and other escrow items. The new maturity date will be November 1, 2035 ("New Maturity Date").

The Deferred Amounts will be deferred to the end of the loan and will be due and payable on the New Maturity Date. The balance of fees not deferred will remain due on the loan until paid.

Beginning on July 1, 2014 and ending at the Reduction Period Maturity Date as long as Borrower is not in default in payments due under this Agreement or other representations made in this Agreement, the new interest rate and monthly payments due through the Reduction Period Maturity Date are as follows:

| | |
|---|---|
| New Interest Rate: | 5% |
| Reduction Period Maturity Date: | June 1, 2019 |
| Monthly Reduction Period | |
| Range of Monthly Interest Payment *: | $ 720.59 |
| Monthly Escrow Payment Amount **: | $ 447.08 |
| Ancillary Monthly Payment ***: | $ 0.00 |
| TOTAL MONTHLY PAYMENT: | $ 1,167.67 |

\* Your payment amount will vary based upon the number of days in any payment cycle. Displayed above is the range for 28 to 31 day months.

\*\* Servicer retains the right to adjust the Monthly Escrow Payment Amount during the Reduction Period as permitted by the Loan Documents and the Real Estate Settlement Procedures Act.

\*\*\* Servicer retains the right to adjust the Ancillary Monthly Payment Amount during the Reduction Period as permitted by the Loan Documents.

The terms in Section 3 of this Agreement shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate. If the Loan Documents do not provide for the establishment of an escrow account for property taxes and insurance to be held and disbursed by the Servicer (referred to herein as "T&I Escrow"), then Borrower will pay Servicer the Monthly Escrow Payment Amount set forth above for Servicer to place in a T&I Escrow Account, and Servicer will pay property taxes and insurance premiums on the Property as they become due.

If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the New Modified Balance as necessary to account for these amounts, and will send an appropriate written notice of such adjustment to Borrower.

If Borrower delivers all payments described above and as required herein through the Reduction Period Maturity Date, and if Borrower is not otherwise in default under the Loan Documents or this Agreement at the Reduction Period Maturity Date, then upon the Reduction Period Maturity Date, Borrower will continue making payments in accordance with the interest rate and additional terms required by the Loan Documents without regard to this Agreement provided, however, that Borrower's monthly payment will adjust to an amount sufficient to fully repay the New Principal Balance over the remaining term of the loan (as may be modified herein) in substantially equal fully amortizing installments of principal and interest accruing thereon. In addition to any other amounts due under the terms of the Loan Documents, the Final Payment will include the Deferred Amounts, which will be due and owing no later than the Maturity Date of the Loan.

4. **Events of Default.** If Borrower fails to make any of the payments described in Section 3 of this Agreement within fifteen (15) days after the due date thereof, or otherwise fails to comply with any of the terms, conditions, representations or agreements set forth in this Agreement or in the Loan Documents, then such failure constitutes an event of default under this Agreement and the Loan Documents. Upon Borrower's default and the expiration of any right to cure under the Loan Documents, or as prescribed by applicable law, at Servicer's option and upon Servicer's delivery of notice to Borrower, this Agreement shall become null and void as though it had never existed, and Servicer's rights and Borrower's obligations will be determined without regard to this Agreement. Furthermore and unless federal or state law requires otherwise, Servicer will be entitled to (i) resume foreclosure activities and complete any foreclosure of the Property, and (ii) state as due under the Note an amount calculated pursuant to the Loan Documents without regard to this Agreement, though giving credit for any payments made hereunder as provided for in the Loan Documents. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

   A. That all persons who signed the Loan Documents, or their authorized representative(s), have signed this Agreement, unless a Borrower is deceased or the Servicer has waived this requirement in writing.

4:72

3

B. That this Agreement shall supersede the terms of any modification or forbearance that the Parties previously entered into with respect to the Loan.

C. That Borrower will comply with any agreement or obligation in the Loan Documents to make all payments of taxes, insurance premiums, assessments, refunds of advances due Servicer, impounds, and all other payments, the amount of which may change periodically over the term of the Loan.

D. That this Agreement constitutes notice that the Servicer's waiver as to payment of T&I Escrow amounts due to Servicer, if any, in the Loan Documents is hereby revoked, and that Borrower has been advised of the amount needed to fully fund the T&I Escrow Account. Unless expressly required by applicable law, Servicer shall not be required to pay Borrower any interest with respect to the T&I Escrow Account. Unless expressly prohibited by law, Borrower hereby waives the right to receive interest with respect to the T&I Escrow Account.

E. That the Loan Documents are composed of duly executed, valid, binding agreements, enforceable in accordance with their terms creating a valid and enforceable lien against the Property, and that the Parties hereby reaffirm the Loan Documents.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, Servicer and Borrower will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Loan Documents defined in Section B(1) of this Agreement. However, Servicer shall not exercise this option if federal or other applicable law or regulation prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed, within which Borrower must pay all sums due under the Note. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstances, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

I. Nothing herein shall be deemed to be a waiver of any default that exists as of the date hereof, whether declared by the Servicer or not, it being expressly agreed that any such default shall continue to exist until Borrower fully performs each and every condition hereof.

J. As a material part of the consideration for Servicer entering into this Agreement, except as prohibited by applicable law, Borrower (i) releases and holds harmless any current or prior Servicer or note-holder from and against any claims, actions and defenses arising out of or relating to the Loan Documents or the servicing of the Loan (ii) represents and warrants that Borrower has no right of set-off or counterclaim or any defense to the obligations under the Loan Documents. Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

K. Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

L. Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

In Witness Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below.

Borrower Signature

Date: 5-20-14

Witness Signature

Borrower Signature

Date: 5-20-14

Witness Signature

Account Number: ███████

SERVICER
Caliber Home Loans, Inc., on behalf of the current investor

By: _____

5/22/14

Modification Effective Date
(Determined by Servicer)

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s): DENNIS T AUTRY Jr., DARLENE AUTRY | Lender: Accredited Home Lenders, Inc. A California Corporation 15090 Avenue of Science San Diego, CA 92128 |
|---|---|
| | Loan #: |

**Property Address:**
634 EAST BLUEBIRD STREET
GARDNER, KS 66030

**Legal Description:**

LOT 16, BLOCK 4, GENESIS CREEK ESTATES NO.1, A SUBDIVISION IN THE CITY OF GARDNER,
JOHNSON COUNTY, KANSAS

Initials _____

MIN #

AUTRY
Page 1 of 1

Loan #

2006010-0007012                    10/10/2006
P: 16 of 72                        03:45:16 PM
Register of Deeds                  T20060005091
Johnson Co MOD    B:200610  P:007012

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **17th** day of **October , 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Accredited Home Lenders, Inc., A California Corporation** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**634 EAST BLUEBIRD STREET**
**GARDNER, KS 66030**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **7.625%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st** day of **November, 2007** and on the **1st** day of every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Initials:

Loan #

AHL modified FannieMae 3138 (1/01)

MIN # ██████████

AUTRY
Page 1 of 3

20051018-0007012                    10/18/2005
P: 17 of 22                         03:45:16 PM
Register of Deeds    T2005A0058691
Johnson Co ROD    B:200510  P:007012

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And One-eighth** percentage points (**6.125%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.125%** or less than **7.625%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One And One-half** percentage points ( **1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.625%** or less than **7.625%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MIN #

AUTRY
Page 2 of 3

Initials:
Loan #
AHL modified FannieMae 3138 (1/01)

**BY SIGNING BELOW**, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Dennis Autry Jr_ 10-17-05     _Darlene Autry_ 10/17/05
Borrower           Date             Borrower                     Date
**DENNIS AUTRY, Jr.**                                  **DARLENE AUTRY**

_____      _____
Borrower           Date             Borrower                     Date

_____      _____
Borrower           Date             Borrower                     Date

_____      _____
Borrower           Date             Borrower                     Date

MIN # ██████████            AUTRY                  Loan # ████████
                            Page 3 of 3           AHL modified FannieMae 3138 (1/01)

2005101B-0007012      10/19/2005
P: 15 of 22           03:45:15 PM
Register of Deeds     T20258868691
Johnson Co ROD    B:200510   P:007012

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **17th** day of **October, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Accredited Home Lenders, Inc.**

**A California Corporation**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **634 EAST BLUEBIRD STREET**
**GARDNER, KS 66030**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **the Security Instrument and any declaration of covenants, conditions, and restrictions**

(the "Declaration"). The Property is a part of a planned unit development known as **GENESIS CREEK**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

Page 1 of 3      Initials: _____

-7R (0411)      VMP Mortgage Solutions, Inc. (800)521-7291

2005101B-000701Z      10/10/2005
B: 20 of 27      03:45:15 PM
Register of Deeds      T20050058691
Johnson Co ROD      B:202510  P:007012

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

VMP -7R (0411)  Page 2 of 3  Form 3150 1/01

20051018-0007012        10/18/2005
P: 21 of 22              03:48:16 PM
Register of Deeds        T20050059601
Johnson Co ROD    B:200518  P:007012

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
DENNIS X AUTRY Jr.         -Borrower
  X. DJA Jr.

_____ (Seal)
DARLENE AUTRY              -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

-7R (0411)          Page 3 of 3          Form 3150 1/01

20051018-0007012              10/18/2005
P: 22 of 22                   03:45:15 PM
Register of Deeds             T20050058091
Johnson Co KS      B 202510  P 07012



July 24, 2017

DENNIS J AUTRY JR
DARLENE AUTRY
SUITE 630
10955 LOWELL AVENUE
OVERLAND PARK, KS 66210-0000

**Account Number:** ▮▮▮▮▮▮
**Property Address:** 634 EAST BLUEBIRD STREET
GARDNER, KS 66030

**RE: Important notice regarding your Annual Escrow Account Disclosure Statement and your new escrow payment amount**

**This statement is for informational purposes only**

Dear Customer(s):

Select Portfolio Servicing, Inc. (SPS) reviewed your escrow account to determine your new monthly escrow payment. Following are the answers to the most common questions we receive about the escrow account and the details related to the analysis.

1. **What is the amount of my new monthly payment?**

| Table 1 | Current Payment (As of last analysis) | New Payment (As of 11/01/2017) | Change |
|---|---|---|---|
| Principal and Interest | | $715.77 | |
| Regular Escrow Payment | $487.18 | $193.08 | $-294.10 |
| Monthly Shortage Payment | $0.00 | $0.00 | $0.00 |
| **Total Payment** | | **$908.85** | **$-294.10** |

Since you are in active bankruptcy, your new payment amount shown above is the amount due on the payment due date for each month starting on the month following the date you filed your petition. If the trustee is making your mortgage payments directly to SPS on your behalf, you may need to modify your plan.

2. **Why did the escrow portion of my payment change?**
There are three (3) main reasons why your escrow account payment may change from year to year.

A. **Regular Escrow Payments** - Changes occur based on the expected property tax or insurance payments that were made this past year. Table 2 shows your payment results this past year.

| Table 2 | Prior Year Estimated Payments | Current Year Estimated Payments | Change |
|---|---|---|---|
| Tax Payments | $3,529.22 | $0.00 | $-3,529.22 |
| Hazard Insurance Payments | $2,317.00 | $2,317.00 | $0.00 |
| **Total Annual Escrow Payments** | **$5,846.22** | **$2,317.00** | **$-3,529.22** |
| **Monthly Escrow Payment** | **$487.18** | **$193.08** | **$-294.10** |
| **Monthly Shortage Payment** | **$0.00** | **$0.00** | **$0.00** |

B. **Escrow Reserve Requirements** – RESPA/Federal law allows lenders to maintain a two (2) month reserve in your escrow account, commonly referred to as a cushion. Your account has a monthly reserve requirement of 0 months.

See reverse side

**C. Escrow Surplus** – The projected starting balance on your account is $3,107.25. According to the projections shown in Tables 3 and 4, your required beginning balance should be $1,930.84.

This means you have a surplus of $1,176.41. If your account meets minimum criteria defined below, we will send a refund check for this surplus under separate cover for the full or partial refund[1].

Please be advised that this is not an attempt to collect any pre-petition debt, which we have previously claimed on the Proof of Claim.

Your unpaid pre-petition escrow amount is $15,357.20. This amount has been removed from the projected starting balance. Your escrow required amount is $1,930.84. Your projected starting escrow account balance is $3,107.25.

Your total refund is $1,176.41, which is determined by subtracting your required escrow amount from your actual escrow account balance. $3,107.25 - $26,430.74 = $1,176.41.

Table 3 below shows a detailed history of your escrow account transactions since your last analysis. An asterisk (*) indicates a difference from a previous estimate in either the date or the amount. The letter E beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown prior to the effective date of this new analysis.

Table 3

| Month | Description | Payments Estimate | Payments Actual | Disbursements Estimate | Disbursements Actual | Total Balance |
|---|---|---|---|---|---|---|
| **History** | Beginning Balance | | | | | $1,645.71 |
| August 2017 | | 487.18 | 487.18 E | 0.00 | 0.00 E | 2,132.89 |
| September 2017 | | 487.18 | 487.18 E | 0.00 | 0.00 E | 2,620.07 |
| October 2017 | | 487.18 | 487.18 E | 0.00 | 0.00 E | 3,107.25 |

Table 4 below shows a detailed projection of future estimated escrow activity of your escrow account transactions since your last analysis as well as a projection of future escrow activity. The double asterisk (**) next to the required balance indicates the lowest projected balance in the analysis. This low balance is used to determine the surplus or shortage in your escrow account at the time of this analysis.

Table 4

| Month | Description | Payments Estimate | Disbursements Estimate | Beginning Balance | Required Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | $3,107.25 | $1,930.84 |
| November 2017 | | 193.08 | 0.00 | 3,300.33 | 2,123.92 |
| December 2017 | HAZARD INS | 193.08 | 2,317.00 | 1,176.41 | 0.00** |
| January 2018 | | 193.08 | 0.00 | 1,369.49 | 193.08 |
| February 2018 | | 193.08 | 0.00 | 1,562.57 | 386.16 |
| March 2018 | | 193.08 | 0.00 | 1,755.65 | 579.24 |
| April 2018 | | 193.08 | 0.00 | 1,948.73 | 772.32 |
| May 2018 | | 193.08 | 0.00 | 2,141.81 | 965.40 |
| June 2018 | | 193.08 | 0.00 | 2,334.89 | 1,158.48 |
| July 2018 | | 193.08 | 0.00 | 2,527.97 | 1,351.56 |
| August 2018 | | 193.08 | 0.00 | 2,721.05 | 1,544.64 |
| September 2018 | | 193.08 | 0.00 | 2,914.13 | 1,737.72 |
| October 2018 | | 193.08 | 0.00 | 3,107.21 | 1,930.80 |

### ¹ Refund Information

Although our analysis determined an overage in your escrow account, a check may not be issued. This may be due to one or more of the following.

- An overage refund that exceeds your current escrow balance will not be refunded in one check. You will receive a check under separate cover for the amount currently held in escrow and then once remaining funds become available the difference between the previous refund and the full refund will be sent. You may not receive a refund of the amount reported on this statement, as this amount is a projection of the funds that will be in your account in the future, not the amount of the funds that are currently in your account.
- Overages are not refunded when an account is delinquent. Please review your payment history and due date for your account. If it is 30 days or greater past due, an escrow refund will not be sent until the payments have been made. Once your mortgage payments are current, please request a refund of your escrow overage amount. Your refund amount may vary at that time from the amount listed on this statement as additional escrow activity may change the amount eligible for a refund.

If your account is set up on a monthly automatic withdrawal payment option, your monthly payment withdrawal amount will be updated according to the adjusted payment above once the escrow analysis becomes effective. If you have any questions or concerns, please contact our Customer Service Department. Our toll-free number is 800-258-8602 and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.n. to 2 p.m., Eastern Time. You may also visit our website at www.spservicing.com.

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This information is intended for informational purposes only and is not considered an attempt to collect a debt.**



See reverse side

29_____ ___06/01/2013
P-1 of 2     F  $9.00     11:26 87 84
Register of Deeds  T2013063224S
JO CO KS  BK 201305 PG-000317

CORRECTIVE
## CORPORATE ASSIGNMENT OF MORTGAGE

Johnson, Kansas
SELLER'S SERVICING ███████████ AUTRY"

MERS # ██████████████ SIS #: 1-888-679-6377

Date of Assignment: April 29th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION "ITS SUCCESSORS AND ASSIGNS" at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: HSBC MORTGAGE SERVICES INC a: 636 GRAND REGENCY BLVD, BRANDON, FL 33510

Executed By: DENNIS J. AUTRY, JR. AND DARLENE AUTRY, HUSBAND AND WIFE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC A CALIFORNIA CORPORATION, "ITS SUCCESSORS AND ASSIGNS"
Date of Mortgage: 10/17/2005 Recorded: 10/18/2005 in Book/Reel/Liber: 200510 Page/Folio: 007013 as Instrument No. ██████████ In the County of Johnson, State of Kansas.

Property Address: 634 EAST BLUEBIRD STREET, GARDNER, KS 66030

Legal: ***THIS IS A CORRECTIVE CORPORATE ASSIGNMENT OF MORTGAGE TO CORRECT THE PREVIOUSLY RECORDED CORPORATE ASSIGNMENT OF MORTGAGE, RECORDED ON 01/30/2013, IN BOOK 201301 PAGE 011359 AS INSTRUMENT NO. 20130130-0011359 TO ADDRESS A SCRIVENER'S ERROR IN WHICH THE TITLE OF THE INDIVIDUAL WHO EXECUTED SAID INSTRUMENT WAS REFERRED TO AS A VICE PRESIDENT, ADMINISTRATIVE SERVICES DIVISION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION "ITS SUCCESSORS AND ASSIGNS" RATHER THAN BY THE INDIVIDUAL'S CORRECT TITLE: VICE PRESIDENT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION "ITS SUCCESSORS AND ASSIGNS"****

LOT 10, BLOCK 4, GENESIS CREEK ESTATES NO.1, A SUBDIVISION IN THE CITY OF GARDNER, JOHNSON COUNTY, KANSAS.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $177,430.40 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION "ITS SUCCESSORS AND ASSIGNS"
On April 29th, 2013

By: _____
MICHELLE LYTLE, Vice President

Env. Legal Entity Review

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Florida
COUNTY OF Hillsborough

On April 29th, 2013, before me, FLORETTE LAWSON, a Notary Public in and for Hillsborough in the State of
Florida, personally appeared MICHELLE LYTLE, Vice President of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION *ITS
SUCCESSORS AND ASSIGNS*, personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

FLORETTE LAWSON
Notary Expires: 12/16/2016  #EE858826

(This area for notarial seal)

Recording Requested By:HSBC MORTGAGE SERVICES
 When Recorded Return To:ASSIGNMENTS, HSBC MORTGAGE SERVICES P.O. BOX 1422, BRANDON, FL
33509


FIRST AMERICAN
TITLE COMPANY

20140326-0006181
Electronic Recording          03/26/2014
Pages: 2          F: $9.00          10:22:34 AM
Register of Deeds          T20140014235
JO CO KS          BK:201403          PG:006181

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
CALIBER HOME LOANS
13801 Wireless Way
Oklahoma City, OK 73134

Prepared By:          Gayle Clay          Loan Number:

MERS Min:

Parcel ID::

Space Above This Line For Recorder's Use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned HSBC MORTGAGE SERVICES, INC. whose address is 636 GRAND REGENCY BLVD., BRANDON, FL 33510, hereby grants, assigns and transfers to U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134 all beneficial interest under that certain mortgage/Deed of Trust/Security Deed dated 10/17/2005 executed by DENNIS J AUTRY JR. and DARLENE AUTRY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS in the amount of $177,430.40 and recorded on 10/18/2005 as Instrument # [redacted] in Book/Volume or Liber No. 200510 , Page/folio 007012 of Official Records in the County Recorder's office of JOHNSON County, KS, describing land herein as: 'SEE ATTACHED 'EXHIBIT A'

Property Address:          634 EAST BLUEBIRD STREET, GARDNER KS 66030-1829

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

HSBC MORTGAGE SERVICES, INC., BY CALIBER
HOME LOANS, INC., AS ITS ATTORNEY IN FACT

Witness #1          Sasha Candelaria

Witness #2          NAOMI FEISTEL

By:          Adan Roesner

County of San Diego )          Title:          Vice President
State of California )

On          March          14, 2014          before me, Ashlee Faunce, Notary Public, personally appeared, Adan Roesner , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal,

Notary Name: Ashlee Faunce          My Commission Expires: Oct 13, 2016

ASHLEE FAUNCE
Commission # 1993906
Notary Public - California
San Diego County
My Comm. Expires Oct 13, 2016

LEGAL DESCRIPTION

EXHIBIT "A"

**LOT 10, BLOCK 4, GENESIS CREEK ESTATES NO. 1, A SUBDIVISION IN THE CITY OF GARDNER, JOHNSON COUNTY, KANSAS.**

Parcel Number CP36250004 0010

| 20151214-0003830 | |
|---|---|
| Electronic Recording | 12/14/2015 |
| Pages: 2 $ 515.00 | 08:59:55 AM |
| Register of Deeds | T20160087640 |
| JO CO KS    BK:201512 | PG:003830 |

## CORPORATE ASSIGNMENT OF MORTGAGE

Johnson, Kansas   REFERENCE #: [redacted]   "AUTRY, JR."
INVESTOR [redacted]
Assignment Prepared on: November 17th, 2015.

Assignor: U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT at CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134.
Assignee: CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS INDENTURE TRUSTEE FOR THE CSMC 2014-RPL3 TRUST, MORTGAGE-BACKED NOTES SERIES 2014-RPL3 at C/O SELECT PORTFOLIO SERVICING, I 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115.

Executed By: DENNIS J. AUTRY, JR. AND DARLENE AUTRY, HUSBAND AND WIFE  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 10/17/2005 Recorded:  10/18/2005  In Book/Reel/Liber: 200510 Page/Folio: 007012 as Instrument No. [redacted] In Johnson County , State of Kansas.

Property Address: 634 EAST BLUEBIRD STREET, GARDNER, KS 66030

Legal: LOT 10, BLOCK 4, GENESIS CREEK ESTATES NO. 1, A SUBDIVISION IN THE CITY OF GARDNER, JOHNSON COUNTY, KANSAS.

PARCEL NUMBER CP36250004 0010

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $177,430.40 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT
On _11/20/2015_

By: _____
Kendra Cook_____, Vice President


STATE OF _Oklahoma____
COUNTY OF _Oklahoma__

**Dannielle Ewald**

On _11/20/2015_, before me, _____, a Notary Public in and for _Oklahoma_ in the State of _Oklahoma____, personally appeared _Kendra Cook____, Vice President, U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF8 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Dannielle Ewald_ (signature)
Notary Expires: /1 7 20 9

(This area for notarial seal)

BILL KOCH
Recording Requested By: RICHMOND MONROE GROUP

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

When Recorded Return To: Richmond Monroe Group Po Box 458, Kimberling City, Mo 65686



Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619

ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS

HAZARD INS        $2,317.00

ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE PREPARED FOR:

Loan Number: ▮▮▮▮▮
Analysis Date: 11/15/2017

DENNIS J AUTRY JR
DARLENE AUTRY
10955 LOWELL AVE STE 630
OVERLAND PARK KS 66210-2319

**NEW MONTHLY PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $715.77 |
| Required Escrow Payment | $193.08 |
| Shortage/Surplus Spread | $.00 |
| Optional Program Payment | $.00 |
| Buydown or Assistance Payments | $.00 |
| Other | $.00 |
| **TOTAL MONTHLY PAYMENT** | **$908.85** |
| **NEW PAYMENT EFFECTIVE DATE:** | **08/01/2017** |

**FOR BORROWERS IN BANKRUPTCY OR BORROWERS WHOSE DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS IS AN INFORMATIONAL STATEMENT AND IT IS NOT AN ATTEMPT TO COLLECT A DEBT. PLEASE NOTE THAT EVEN IF YOUR DEBT HAS BEEN DISCHARGED IN BANKRUPTCY AND YOU ARE NO LONGER PERSONALLY LIABLE ON THE DEBT, THE LENDER MAY, IN ACCORDANCE WITH APPLICABLE LAW, PURSUE ITS RIGHTS TO FORECLOSE ON THE PROPERTY SECURING THE DEBT.**

Rushmore Loan Management Services has completed an analysis of the escrow account. We have adjusted the mortgage payment to reflect changes in the real estate taxes and/or property insurance. The escrow items to be disbursed from the account are itemized above. If you have questions regarding this analysis, please write to our Customer Service Department at Rushmore Loan Management Services, P.O. Box 55004, Irvine, CA 92619, or call toll-free 1-888-504-6700.

In the event you utilize a third party to remit your payments, please inform them of the effective date of any change in your payment.

**ANNUAL ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

This is an estimate of activity in the escrow account during the coming year based on payments anticipated to be made from the account.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| | | MIP/PMI | TAXES FLOOD | HAZ INS | SPECIAL | PROJECTED | REQUIRED |
| STARTING BALANCE | | | | | | $15189.01- | $1351.60 |
| AUG | $193.08 | | | | | $14995.93- | $1544.68 |
| SEP | $193.08 | | | | | $14802.85- | $1737.76 |
| OCT | $193.08 | | | | | $14609.77- | $1930.84 |
| NOV | $193.08 | | | | | $14416.69- | $2123.92 |
| DEC | $193.08 | | | $2,317.00 | | $16540.61- | $0.00 * |
| JAN | $193.08 | | | | | $16347.53- | $193.08 |
| FEB | $193.08 | | | | | $16154.45- | $386.16 |
| MAR | $193.08 | | | | | $15961.37- | $579.24 |
| APR | $193.08 | | | | | $15768.29- | $772.32 |
| MAY | $193.08 | | | | | $15575.21- | $965.40 |
| JUN | $193.08 | | | | | $15382.13- | $1158.48 |
| JUL | $193.08 | | | | | $15189.05- | $1351.56 |

*Indicates a projected low point of $16,540.61-. Under the mortgage contract, state or federal law, the lowest monthly balance should not exceed $.00. The difference between the projected low point and the amount required is $0.00. This is the surplus.

Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

IF THIS ESCROW ANALYSIS INDICATES THAT THERE IS A SURPLUS, IT MAY NOT MEAN THAT YOU ARE ENTITLED TO RECEIVE A RETURN OF THAT SURPLUS. THIS ANALYSIS WAS CALCULATED BASED ON AN ASSUMPTION THAT THE ACCOUNT IS CURRENT ACCORDING TO THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST. IF THE ACCOUNT IS BEHIND, IN DEFAULT, OR IN BANKRUPTCY, THIS ANALYSIS MAY NOT REFLECT THE CURRENT STATE OF THE ACCOUNT OR THE TERMS OF A BANKRUPTCY PLAN. IF THERE ARE ENOUGH FUNDS IN THE ESCROW ACCOUNT AND THE SURPLUS IS $50 OR GREATER, THAT SURPLUS WILL BE MAILED TO YOU WITHIN 30 DAYS, PROVIDED THE ACCOUNT IS CURRENT UNDER THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST.

LOAN NUMBER: ▮▮▮▮▮       SURPLUS AMOUNT:    $.00

NAME: DENNIS J AUTRY JR

IF THERE ARE ENOUGH FUNDS IN THE ACCOUNT TO DISBURSE THE PROJECTED OVERAGE AND THE ACCOUNT IS CURRENT, THEN THE REFUND WILL BE MAILED TO YOU WITHIN 30 DAYS.

Loan Number: ███████        Name: DENNIS J AUTRY JR

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - ACCOUNT HISTORY**

This is a statement of actual activity in the escrow account from 10/2017 through 07/2017. Last year's projections are next to the actual activity. The most recent mortgage payment was $715.77 of which $.00 went to the escrow account and the remainder of $715.77 went towards the mortgage loan. An asterisk (*) indicates a difference between a projected disbursement and actual activity.

| | PAYMENTS TO ESCROW ACCOUNT | | PAYMENTS FROM ESCROW ACCOUNT | | | ESCROW BALANCE COMPARISON | |
|---|---|---|---|---|---|---|---|
| MONTH | PROJECTED | ACTUAL | PROJECTED | ACTUAL | DESCRIPTION | PROJECTED | ACTUAL |
| STARTING BAL. | | | | | | $0.00 | $15189.01- |
| NOV | | * | | | | $0.00 | $15189.01- |

OVER THIS PERIOD, AN ADDITIONAL $.00 WAS DEPOSITED INTO THE ESCROW ACCOUNT FOR INTEREST ON ESCROW.

The actual lowest monthly balance was less than $.00. The items with an asterisk on the account history may explain this, if you would like a further explanation, please call our toll-free number: 1-888-504-6700.



**FOR BORROWERS IN BANKRUPTCY OR BORROWERS WHOSE DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS IS AN INFORMATIONAL STATEMENT AND IT IS NOT AN ATTEMPT TO COLLECT A DEBT. PLEASE NOTE THAT EVEN IF YOUR DEBT HAS BEEN DISCHARGED IN BANKRUPTCY AND YOU ARE NO LONGER PERSONALLY LIABLE ON THE DEBT, THE LENDER MAY, IN ACCORDANCE WITH APPLICABLE LAY, PURSUE ITS RIGHTS TO FORECLOSE ON THE PROPERTY SECURING THE DEBT.**

IF THIS ESCROW ANALYSIS INDICATES THAT THERE IS A SURPLUS, IT MAY NOT MEAN THAT YOU ARE ENTITLED TO RECEIVE A RETURN OF THAT SURPLUS. THIS ANALYSIS WAS CALCULATED BASED ON AN ASSUMPTION THAT THE ACCOUNT IS CURRENT ACCORDING TO THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST. IF THE ACCOUNT IS BEHIND, IN DEFAULT, OR IN BANKRUPTCY, THIS ANALYSIS MAY NOT REFLECT THE CURRENT STATE OF THE ACCOUNT OR THE TERMS OF A BANKRUPTCY PLAN. IF THERE ARE ENOUGH FUNDS IN THE ESCROW ACCOUNT AND THE SURPLUS IS $50 OR GREATER, THAT SURPLUS WILL BE MAILED TO YOU WITHIN 30 DAYS, PROVIDED THE ACCOUNT IS CURRENT UNDER THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST.

*If there is an amount listed in the "Actual" column under Payments To Escrow Account on Page 2 above, then this is the assumption that was made and indicates the amount that would have been paid into escrow for a contractually current loan. This number does not represent payments that were actually made by you. As discussed above, these escrow calculations are calculated based on an assumption that the account would be current according to the terms of the note and mortgage/deed of trust.

